The final case is Doe v. Meron. Mr. Brown? Yes, Your Honor, of course. But do you want to sit in a different chair? Well, it appeared to me that an appellant was consistently sitting on that side of the panel. No, here in our court, lawyers can sit whichever side. We don't have any rules about plaintiffs, defendants, appellants, appellees sitting in any particular spot. And that's on our website somewhere, if you looked it up. It does not concern me on the side table, I know. May it please the Court, my name is Christopher – It's good to have you here. I'm sorry, Your Honor? I said it's fine to have you here. It's fine to be here. I look forward to hearing from you. My name is Christopher Brown. I'm here on behalf of the appellant's Barry Doe and his three minor children. Judge King, Judge Diaz, I've seen you before. Judge Bonobon, it's a pleasure. It's the first time to appear before you. It is my honor to represent the Doe's in this case, and this is an important issue. I want to make careful use of my time to express what is at stake. The 12B6 motion to dismiss was granted by the District Court judge in Maryland, stating that essentially all the defendants were acting within the scope of their employment per the United States certification. Therefore, they were all subject to the Federal Tort Claims Act, and therefore there's a foreign country exception, and all those claims were dismissed, including some issues with Gonzales of the Westfall Act with the doctor. In addition, the constitutional claims, which were pled as bivens, implied remedies, causes of action, were dismissed because this court has had two recent opinions on bivens issues, Atkinson and Chunkos. So I expect the panel to be familiar with the issues. I'm sure you will. You don't contest that the action was taking place outside the U.S. on the foreign? Do not contest. Okay. So really it comes down to whether they earned up their employment or not. Is that what this is really about? Yes. Now, we have a couple things we have to deal with. One, were they acting within the scope of their employment? And if they were not, we can bring the state law claims, but then the bivens claims, of course, would not be allowed. You have to disallow or successfully convince us that the substitution was improper. In order to bring my state law claims, whether or not the substitution is improper doesn't affect my right to bring the bivens action. But the Tort Claims Act and the foreign country exception, your position is that the substitution was improper. And after a review of what appear to be numerous issues, it really boils down to that one question, Judge Kennedy. And if we do, in the area of the district court's review of case laws, right, the area of the review is how she perceives the facts of the complaint. She repeatedly makes reference to what she appears to be facts that she doesn't find prejudice, that she feels are hearsay. And I'm hopeful that the panel is as surprised as I am about those assertions. If you place an allegation or complaint of what a witness said, that is not hearsay until you show up at trial and don't have the witness. Nothing in the complaint is hearsay if it's allegations of what person said, of things that they observed. But procedurally, once there's a certification, we go a little bit past the complaint, don't we? And you have an obligation to present evidence. And you did that in three forms. You did it in an affidavit of your client. You did it in a reference to a document of a summary of a conversation with Ms. Young. And you have a transcript of a conversation between your client and Mr. Wallace. So that's really what we're talking about, isn't it? Whether that overcomes to a preponderance of evidence shows that these defendants are not acting within the scope of their authority compared with the evidence that the government put in. Isn't that where we are? That's correct, Your Honor. Well, the government hadn't put in any evidence yet. They put in the affidavit of Mr. Marin and memo on which his action was based. They put in two or three things. I may have it a little wrong. And I may, too. I'm late to this party. I ended my appearance about a few weeks ago. But let me say this. In light of the allegations of the complaint, if they're accepted as true, and the United States can come in and say, well, and they're going to do that. It's going to happen. They're going to say they're acting within the scope of the complaint. But based on the allegations themselves, and I have some NCIS naval regulations I'm asked for judicial notice of. I think Judge Diaz's presence on the panel is going to be very helpful. If the parties are engaging in actions for which they are not authorized to do. I haven't seen the show NCIS, so I don't think I'm going to be quite as helpful as you might want me to be. If they engage in actions that they're unauthorized to take, and the Restatement of Second, which the appellees rely on, makes clear that if you engage in an unauthorized action, that can certainly be evidence you're acting outside of the scope. The regulations make clear that Captain Marin has no authority to do investigations. He does have one piece of authority, which is cited by the district court, which is in exigent circumstances, he can remove a child from a dangerous situation. He doesn't have authority to subject a child to an interview, subject a child to an invasive procedure. This court ruled in U.S. v. Edwards, it discussed the additional factors determining whether or not a strip search is reasonable. In a case where the officers found a baggie tied around the suspect's privates out in public, and they used a knife to cut the baggie off, and this court overturned the denial of his motion to suppress, stating that was, in fact, a strip search, and they failed to comply with these factors of reasonableness for such an invasive search. So that's what happens here. Three children, ages 5, 7, and 9, 5, 7, and 8, are taken from school by armed guards, given by the principal who has no authority to release children to anyone but their parent, taken to a facility, against their will, while asking for their father, told they can't have him, stripped down, and probed to determine whether or not he had been sexually abused through testing of their... Of course, this was done based on a claim that there was some evidence of abuse, and I know you dispute that hotly, but isn't it the case that under both D.C. and Maryland law, which either one of those would apply under some confusion or dispute as to which applies, is that even tortious conduct would, in theory, still could fall within the scope of employment? Egregious wouldn't, and the Westfall Act does not protect fellow employees from egregious behavior, and it is egregious, and in order to make that argument, Judge Diaz, I want to cite some case law from various circuits concerning familial rights, and the case law is extremely strong in discussing the importance of those rights. So, starting with the United States Supreme Court, Stanley v. Illinois, 405 U.S. 645 and 651, 1972. Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. United States Supreme Court, Troxell v. Granville, 530 U.S. 57. The right to familial relations is the oldest of the fundamental liberty interests recognized. Moving on to some case law from the Seventh Circuit, Doe v. Heck, 327 F. 3rd, 492. A student removed from class to be questioned by a case worker regarding alleged abuse had been seized for Fourth Amendment purposes. Ninth Circuit, Calabretta v. Floyd, 189 F. 3rd, 808. The warrantless non-emergency search and seizure of an alleged victim of child abuse at her home violates the Fourth Amendment. Right, those cases all suggest that perhaps there might be a tort, but as I said before, under both DC and Maryland law, even tortious activity or behavior could be within the scope of employment. You're saying that it's more than that? What is it that makes it more than that? I'm saying that the significance of the right being violated reveals the egregious nature of the act, stripping a child away from a parent. But you have to take it in the context of a claim submitted to a commanding officer, the commanding officer of this Naval support activity, and his role is to make sure to take care of the health, welfare, and discipline of everyone, including military troops and civilians. He receives a claim, allegation of alleged abuse. What's he supposed to do? He's entitled to investigate, right? He's supposed to do what he's authorized to do, which is what? Which is what the district court judge said that he did. That's where she erred. He was authorized to refer to NCIS, which he did. They refused to examine. He went up to the next level. They refused to pursue it. He went up to the director. The director of the NCIS, the body with the investigative power on the base. He then has the authority, if he feels that the child is in danger, to remove the child from the danger circumstances, both from the home, whatever it may be. He does not have the authority to say, you know what, if the NCIS isn't going to do it, I'm going to bring in doctors here. I'm going to have those kids pulled from the school. He's refused consent. He wants to force me to allow the NCIS people to be present when they're interviewed. So if someone violates a procedure, and it's an important procedure, I'm not trying to minimize it, but it strikes me that kind of consistent with the law from D.C. and Maryland that you commit a tort within the scope of your employment, and even an intentional tort within the scope of your employment, accepting what you're saying is true. A violation of a military procedure may be wrongful, but that doesn't make it outside the scope of one's employment. Well, I've responded to that twice. The intentional tort thing can be tricky. The case law cited by the district court that I recall was surprising the way it was relied on to suggest that a delivery man could rape a woman could be deemed acting in the further interest of his master. Where there's an indication that your employee has a problem, a felony conviction, assault convictions, could be violence, you will be held liable for violence that that employee engages in. That's not where we are here. When you act outside the scope of employment in an egregious manner, the right being violated must play some role. So if he's authorized to pull a child from an exigent or a dangerous situation, he may do that. He could have requested that the kids be pulled and put somewhere to be safe from whatever danger, based on an allegation received two months prior that he allegedly had. He didn't have the authority to do the other things that he did. And what he did, it's not just that it was a procedure. I understand, Judge Quartermone, what you're saying. The actions he took that were unauthorized were the violations of minor U.S. citizens' most basic Fourth Amendment rights to be free from unreasonable search and a very invasive procedure, seizure, search of their bodies. Given the significance of that fundamental right. And let's keep one thing in mind. Let's not confuse military, respectfully, with law enforcement. This is the equivalent of your boss at your job reporting it to police and them saying they don't want to investigate and him saying, you know what? I'm going to pull the kids from school myself and I'm going to bring a doctor in. But the difference is the military context. Well, it is different. And I don't want this court to think that we're, in the case of the Bivens issue, which is that we can do this for two hours. We're not here to say the policies and procedures of the military need to be questioned by this court or result in unconstitutional behaviors. We are absolutely satisfied with the procedures in the supplemental appendix. They're there. Thank goodness. Right? The appellate has requested them. They talk about who has what authority. If the policies and procedures are fine and not complained about by the appellants, which they are not, we're not asking this court to oversee the operation of the military, which is clearly the province of the executive branch. If they don't follow those policies and procedures and that behavior results in a constitutional violation as severe as this one, then we can pursue them for those violations as a remedy. You're arguing the Bivens point now. Well, let me say the state law claims. That's correct, Your Honor. I'll stay on point. But on your tort claims, you've got to show that somebody in the Justice Department messed up on the substitution, from a legal standpoint, right? And the point is? To unwind the substitution. Yes. And my best argument is that their own policies and procedures show that these actors violated their own policies and procedures in engaging in such heinous acts. These are the lawyers up there in the torts branch in the civil division that you need to be complaining about. But they've been delegated this authority by the Attorney General of the United States to make these decisions. About the certification. They have and they filed a certification of five pages or so. They do it all the time here. And they substituted the United States of America. And I feel confident. And when they substitute the United States of America, the very next thing they do is move to dismiss. Of course. When the Tort Claims Act doesn't cover the torts. And I feel confident. And that's granted. When the Tort Claims Act doesn't cover the torts, because there's a thing called sovereign immunity that kicks in. Which will give us the right to pursue a Bivens action, but I would certainly be more comfortable with state law torts. Then you're going to stretch Bivens. You're not applying Bivens here. You're asking us to stretch Bivens. Create new causes of action. That would be ostensibly Bivens claims. I look forward to resolving the court's concerns and addressing that. I have a minute left. I want to wrap this up, Judge Diaz, with the state law claims. These were egregious acts done outside of their authority, of which they were acutely aware. And engaging in clandestine and secret meetings to make it happen for a period of two months. To then claim exigent circumstances to violate these most basic, fundamental, familiar and parentage rights of minor 5 and 7, 8-year-old kids. So Bivens on a base. Go see the Blue Angels one day and have someone falsely accuse you that you knew in high school who's jealous that you're on the U.S. Court of Appeals. And you get held and your kids get taken to a secret facility. And their privates get probed so they can see if they can get some evidence that you've been sexually abusing them. I mean this is probably the most heinous behavior with respect to any Bivens action or state law claims. I read there were 350 opinions out of this court in the last two years. Only about 12 of them, or 14, resulted in opinions. But not one of them involves a civilian not being charged with a crime, suspected of a crime. Having their Fourth Amendment rights being violated in this manner, or as a result of being tortiously injured in this manner. With respect to the certification, if they're acting outside the scope of their employment, I ask the court to read the supplemental joint appendix. And based on their actions, it should be deemed that they were, we should at least have been given a hearing to determine, how does a doctor practice medicine outside of Maryland? That can't be scope of employment. And we had a problem with that. Thank you. Thank you, Mr. Brown. Mr. Aguilar. Thank you, Your Honors. May it please the court, Daniel Aguilar for the defendants. I'd like to start with the scope of employment, since it seems like that's what we spent the bulk of our time on, on the opening argument. And as this court outlined in Gutierrez de Martinez v. DEA, that's a factual determination that the district court makes. It's ultimately reviewed on its legal conclusion. But the underlying four-factor test that both Maryland and D.C. apply results in factual determinations that the district court made at JA 96 through 101. Which found that each of the individual defendants was acting both in the conduct that the Navy reasonably expected them to perform. And at least in part, out of a motivation to serve the purposes of the United States Navy. So here, Clark Jackson, who is the family advocacy representative, received allegations that Doe was potentially abusing and neglecting his children. He reported those allegations to Landing Officer Marin, and that's at JA 123, I think is where it begins. And it ends with the conclusion that Jackson recommends that we should conduct an investigation of this. At JA 120, that's Commanding Officer Marin's memorandum saying, I am ordering an investigation. I want Dr. Craig and Ms. Webb to come here and to interview and medically examine the children. I think Doe has given us consent to do this because I consider Dr. Craig and Ms. Webb to be neutral third parties. Even if he hasn't given us consent, I think I have authority to do that under the applicable Navy regulations. So what we have is a situation where the defendants have received allegations that there is potential child abuse and neglect on the base. And then decided to conduct an investigation of that. Doe hasn't put forward any evidence to satisfy his burden of proof by preponderance of the evidence that any of the individual defendants were acting outside of the scope of their employment, that they were motivated solely for personal vendettas or anything else that would take them outside the scope of employment. The district court found on each of those four factors that this was the kind of conduct that the employees were expected to perform, that it's reasonably connected to the employee's time and place of work, that it's motivated at least in part by a desire to serve the employer, and that the conduct was expected and foreseeable. That places them squarely within the scope of employment and the United States was correctly substituted as a defendant for the FDCA purposes. I'm happy to answer any other questions on that this court might have. But I'd also like to turn to the other two issues in the case, the 1985 claims and the Bivens claims. In the 1985 claims, it is required as an element of the claim that you plausibly allege that the defendants acted with discriminatory hands towards a protected class. Well, before you get to that, so Mr. Brown seemed to focus his argument not just on, I mean, he obviously objected to the fact that the investigation was initiated, but then he makes allegations and argues that it was the scope of the investigation that was particularly egregious in this case and falls way beyond the scope of any employment authority. What's your response to that? I would direct you to the district court's factual finding on that at JA99, because I consider this to be those allegations that the way that the medical examinations were conducted was egregious. And the court on JA99 says plain as flat evidence that the manner in which Craig examined the child was outside the scope of how a physician examines child victims to determine if they have been abused. And if you go through the complaint, if you go through those three pieces of evidence that he admitted into the record, which are hearsay and there are other issues with them, but there's no specific evidence that anything that happened during those investigations was outside of the normal course of how you would medically examine a potential victim of sexual abuse. Now, of course, physical examination involves touching, and as the district court said, it involves breaching of the clothing. That's expected and foreseeable. That's within the scope of employment, and that's a factual finding that the district court made. The district court reviews for clear error. So I think for all those reasons, there's no basis on which to overturn the substitution of the United States as a defendant here. In the 1985 claims, it's a required element that you have to applaud. Who makes that decision in the department? That is the certification was made by the acting director of the constitutional torts branch. The torts branch? That's correct. On delegated authority. But I thought the attorney general delegated it to the assistant attorney general for civil division. The civil division within the torts branch, that's correct. The assistant attorney general delegates it to the head of the torts branch? My recollection on this is that the CFR site directs it down to the torts branch level. Okay. If that's not accurate, I think that there is a separate memorandum that sub-delegates it from the assistant attorney general to the director of the torts branch. That's what I'm getting at. And you're saying that's all laid out correctly in your papers? Correct. I think it's within the CFR itself. I don't think that there's a supplemental memorandum, but if there is, then that exists. And they haven't challenged that as being a proper delegation. You're saying it's not really the torts branch, it's the constitutional torts branch? Is that separate from the torts branch? It's a sub-component within the torts branch that usually handles political actions. It's a sub-section or something. They've got a branch and then they have sections. Yeah, the constitutional torts, I think, is within the torts branch. It might be a separate component. I work with them, but I'm not actually within their office. That's the one that made the call, the real call here to substitute. Yes, on filing the certification. Now, what this court laid out in Gutierrez de Martínez. That's what it takes to get the individuals out of this case and gets the United States of America in the case. Initially. For tort claims. Yes, initially. But then what this court said in Gutierrez de Martínez is that plaintiffs can challenge that certification. That's what happened here. And they can challenge it. And he could have challenged it and said that whoever made that decision. Well. Right, and then he has to come forward with specific evidence. And they have to prove it and they have to show by preponderance of the evidence and all that. That's correct. I understand. I'm just trying to figure out, set aside myself. Sure. That you all did it right. Yes, we did. And so I'm. And that gets you out of all this except the 1985 and the so-called Bivis bite. No, the certification for the FTCA under the Westfall Act eliminates the FTCA. Well, you need one under Gonzales Act. Under the Gonzales Act for Dr. Craig. That immunizes her. But they're treated as FTCA. Yes, that immunizes her from the state law claims 1985 and Bivis under Huy versus Castaneda. The same reasoning applies there. For the rest of the individual defendants on the 1985 claims, he hasn't put forward any plausible allegations of racial discrimination. The primary allegation that the district court identified is that Doe and his family are African-American and most of the defendants are not. And what this court held in McCleary-Evans versus Maryland Department of Transportation is that that's insufficient. That's merely consistent with a potential theory of racial discrimination. But it does not support a reasonable inference of discrimination. And what the Supreme Court said in Ashcroft versus Iqbal is that it does not satisfy your obligation to plausibly allege discrimination when there is an obvious alternative explanation. And here that obvious alternative explanation is the allegations that the defendants received that Doe was abusing and neglecting his children and that they decided to start an investigation based on that. Doe hasn't alleged that – or Doe hasn't plausibly alleged that any other families of different races who had similar allegations against them were treated differently. In his opening brief, he cites to an – in his affidavit, he cites a conversation with Andrea Brotherton. And he states that there was Andrea Brotherton, who's another person, may have confirmed that this involved racial discrimination. He cites JA 345 to 46. If you look to those JA pages, there's no mention of racial discrimination. In his reply brief at page 5, he alleges that Valerie Young stated the investigation was discriminatory, citing JA 318 to 320. Those JA sites don't include any mention of discrimination. There's no other plausible allegation he's made to support the 1985 claims, and the district court correctly dismissed those. On the last part, on the Bivens cases, Judge King, I think you're right that this is asking Bivens to go in a new direction. It's a new context, and it's a new context for a variety of reasons. One, it's alleging new constitutional claims that's never been recognized before under Bivens, which is the Familial Rights Association. It's occurring in a foreign country, and it's involving the military context where the Supreme Court has never recognized an actionable Bivens claim. And for some reasons, there are special factors that counsel hesitation here. First, Congress has enacted a statutory – Was there also a claim with respect to the search of the children that would seem to fit within what might be a Bivens claim? I don't – there was a Fourth Amendment claim about an illegal search of the children. I don't think that fits within Bivens and that this is a new context because it involves the military. And I think it was the Seventh Circuit in advance that – in its in-bank decision in advance versus Rumsfeld that said, you do have a Fourth Amendment claim here, but because it involves a seizure by military officers, that's a new context. You're identifying a new category of defendants here, and it's taking you out of the Bivens context. Another additional reason why it would be a new context is in Bivens, you have criminal law enforcement trying to prove a criminal case against somebody by entering in their apartment and seizing their personal effects. Here, you have people investigating allegations of child abuse who are trying to take the children out of what they think may be a harmful situation and interviewing and examining them to make sure that their safety is – So, if NCIS had taken up the charter to investigate, would we possibly have a Bivens claim? I don't think so there because it's still – it's being – it's definitely a new context. It's in the military setting and it's happening in a foreign country. And I don't know of any Court of Appeals or Supreme Court decision that has ever recognized a Bivens action based on conduct that took place in a foreign country. So, at a minimum, it's a new context. And then you look to whether there are special factors that counsel hesitation, and here we think there are three. First, the Military Claims Act is a statutory mechanism by which Congress has authorized monetary remedies. In a lot of Bivens cases where you're saying there's an alternative statutory remedial scheme, it's not monetary. It's something else. It's an equitable relief. Here, there was – there is an avenue for monetary relief and the Navy has actually extended an offer under the Military Claims Act to plaintiffs for that. They didn't have as many zeros as the plaintiff would have preferred. That may mean that they're not completely satisfied with that remedial scheme, but it still shows that Congress has thought about what this remedial scheme should look like and actually enacted a statute there. It's not damages or nothing, as Bivens says. It's damages or something that you may not like as much in terms of monetary remedy. But what the Supreme Court said in Ziegler v. Abbasi is that it's not whether you think a Bivens action here would be good policy. It's is there any special factor that counsels hesitation in this context? And if there is, you ought not imply a Bivens remedy. That is a policy judgment about how to provide remedies in that area that is best left to Congress and to the executive. Now, that can be things such as, you know, dismissal of claims or exclusive evidence that don't have any monetary benefit at all could be sufficient to show that there had been some remedy available. Or it doesn't have to be available. It has to have been considered and could have been rejected. That's correct, Your Honor. And I apologize for not remembering the name, but I believe there was a decision from this court a couple of weeks ago in the immigration context against ICE officers that recognized that the non-monetary remedial schemes and processes provided by the INA are an alternative remedial scheme that Congress has enacted and are a special factor that precludes a Bivens remedy in this context. The other two are the fact that it's taken place in a foreign country, which would require the court to apply the Constitution extraterritorially, and it's difficult to see how exactly that should be done as we noted in the Second Circuit has recognized that at the minimum the Fourth Amendment's warrant requirement doesn't apply in a foreign country. You'd have to be figuring out the nuances of that. And this is an area where Congress, under the federal tortins act, has said we don't want a monetary remedy against the United States for actions that happen in a foreign country. So, against that statutory backdrop that precludes FTCA claims, plaintiffs are asking you to imply a cause of action where Congress has not sought to extend one. Can you go back? I don't mean to kind of redirect you back to your first argument that you had mentioned briefly that officer, mayor, and I know that's not the right, I apologize. He's a captain. We refer to him as commanding officer just to avoid any confusion about the ranks of captain. I want, if you could elaborate on the consent issue, what the belief in consent was and what it was based on. Sure. So, at page JA-130, it's an email from Doe to Clark Jackson that says, that I grant FAP permission to speak with my children in my presence or that of a designated third-party observer. So, you're saying not that that necessarily created consent, because certainly Mr. Doe disagrees that it does. But you're saying that commanding officer, mayor, interprets that as consent. Yes, that's at JA-121 in paragraph 4. Commanding officer, mayor, says I find that Doe has consented to his children being interviewed by or in the presence of a neutral third-party. It's my opinion that Dr. Craig and Ms. Webb fulfilled that requirement. This interpretation notwithstanding and pursuant to the reference A, which is the Navy regulation. All that says, I'm just kind of trying to play that issue out. I mean, because the document that he alleges constitutes consent or the basis of his belief in consent, admittedly talks about interviews. But, I mean, it doesn't talk about searches, does it? Is it your position that you can say, hey, I consent to do an interview, but that means I can do a search? Well, if we're talking about his consent, I don't think that that email potentially encompasses anything. It's disagreeable about what it could encompass. It could encompass interviews or consent. I mean, that's an issue for the merits about whether or not any actions taken here were negligent. We don't think they were. We think everything was authorized under the Navy's regs, and you can look to them. Did you use that to say that was part of the basis for saying it was within the scope? That's kind of why I'm getting at it. I mean, if someone's view about consent or any matter that goes outside the language of the document, I mean, hypothetically, assume I believe or we believe that's an unreasonable interpretation of that letter. I mean, do you have a right to unreasonably interpret a document and then claim you're acting within the scope? Well, I think it would depend on the particular circumstances of the case, but here you have the district court resolve those factual inquiries. But we look at this de novo. This is not like, am I wrong? To be clear, you look at the ultimate legal conclusion. Are they acting within scope de novo? But the underlying factual issues, were they acting out of a motivation to serve their employer? Was this kind of conduct expected of them? Were they acting within the time scope of this employment? Those are factual determinations that the district court resolved here. We review those for clear errors? The review on those is for clear error. Now, again, you could have facts that go out various ways, and then maybe there's some disagreement about the ultimate legal conclusion. But based on the facts that the district court found here, even if he's misinterpreting the consent that Doe gave, he's still acting against the backdrop of these Navy regulations. He's still acting against the backdrop of receiving allegations of abuse and neglect and deciding that. But Captain Marin, in his letter, indicated that notwithstanding the issue of consent, that I'm authorized by virtue of my office to do these interviews and to examine the children. Yes, he did. I think I was reading that when we got off on another discussion here. But that's the next point is that, you know, at SA3, this is the general Navy regulation. An installation commander determines a child is in physical danger. The commander may admit the child for required medical care without parental authorization. And that's repeated, again, in the specific regulation that governs NSA Bahrain. It's at page SA15, paragraph 3 there. So, again, we can have an argument later on, if this case were ever to get to merits, about whether these actions were potentially negligent. We don't think they are. But, again, this is a threshold determination that this court in Gutierrez de Martinez said should re-resolve fairly quickly. And unless the plaintiff comes forward with evidence to prove by preponderance of the evidence that none of the defendants were acting within the scope of their employment, then the United States is properly substituted for all of the defendants. And this court reviews those factual determinations for clear error. We don't think there is any there. Reviewing that legal determination de novo with all of the facts that the district court found, we think that's the only reasonable conclusion. Unless there are further questions, we'd ask you to affirm. Thank you, Mr. Aguilar. Appreciate it. Thank you. Mr. Brown? Very briefly, as I have five minutes, let's get a couple of things abundantly clear. And there is the supplemental joint appendix that I am comfortable submitting the question of scope of employment to your honors on the review of the supplemental joint appendix and SECMAV instruction 5430.107 from Secretary of the Navy, Mission and Functions of the Naval Criminal Investigative Service, which discusses the authority of the base commander, the people at FAP, et cetera. What you will find in the supplemental joint appendix and these more specific Dark Department of the Navy regulations is that Marin has no authority to say, I'm ordering an investigation. None. All he can do is refer it to NCIS. He has no authority to order an interview of a child. He has no authority to order an examination of a child, consent or not. He has no authority to do that whatsoever. The only authority he has, and I wouldn't be here if they pulled the kids from school because they said there was an exigent circumstance and he only did that and make an argument to you that how could it be exigent, it was after two months. We would not be here. That would be a factual dispute. This is not what we're having here. What we're having here is his going so far and above and beyond his authority on a specious claim of exigency to engage in behavior he is nowhere near authorized to engage in and bring in doctors who are effectively engaging in battery on minors when they're not authorized to practice medicine outside the state of Maryland. I thought Mr. Aguilar near the end of his presentation read from a relevant authority that gave Captain Marin the right to do just that, that is to interview and then authorize an examination of the children in this particular context. Did he misread that? Yes, I believe he was reading from Marin's own memo saying, I quote, I am authorized, consent or not, responding to your inquiry, to direct the children to be interviewed and examined. Well, I read from the letter, but I thought he read from a particular naval regulation, so we'll just have to figure that out. I ask you to please understand that is not my understanding at all. There is no naval regulation. There is a regulation that says he can refer things to NCIS for investigation, which he did, three levels up, and he can in an accident circumstance pull a child from a dangerous situation or direct a medical care be done like if you're bleeding and you can't find the parent to consent to the help, right, save a child in that circumstance. That's it. That would be the dangerous circumstance he'd be removing them from. That's all he is authorized to do. That is it. And if you couple the two-month passage of time from the specious allegation with his lack of authority to do anything that he did here, with the egregious nature of what did take place, and the clandestine efforts in that two-month period to hide it from the father so he wouldn't get a lawyer or try and protect himself or his family from the actions that were to take place, that does not serve the master. That does not serve the United States sentence. It is not anything he's authorized to do. It is a covert, clandestine, criminal conspiracy, and with respect to the conspiracy count, I have to agree. I would have pled it as a civil conspiracy with an associated tort, whether it's D.C. law or Maryland law, to support it and go on that route. The 1985 conspiracy is based on race. It's going to be extremely difficult in this context. With a minute and ten left, the factors that make it different, and I'm comfortable, scope of employment, review this Department of the Navy's State of the Army Instructions, the Supplementary Joint Appendix, and I assure you, Judge Diaz, you will not find anything authorizing Maryland to engage in interviews or examinations of any persons, let alone children, on a civilian base that is subject to U.S. law. And there's no question the Fourth Amendment applies overseas. At this point, it was a U.S. Supreme Court in Carlson that held on certain terms. It was the fact the FTCA did not provide a remedy that allowed for a Bivens claim. That's where we will be here if we don't have a state law claim and the FTCA steps in and there's a foreign country exception. That would be the reason we have an FTCA claim. If the MCA was converted to an FCA, so they can't say we have the MCA. And this is the same thing. Once you get to this point where you follow the suit, that's why the FTCA is part of the judge's opinion. They didn't file an FTCA complaint administratively. They filed an MCA complaint. And the fact that the difference is in military, I want to imagine a cone starting with Bivens, Davis, Carlson, and then things change. The court and the implied remedy thing, we're starting to have some concerns. We're narrowing it down. What's inside the cone of Bivens? They didn't shut Bivens down. It's still highly regarded as a means to provide a remedy where there's no remedy for what purpose? The core purpose is deterrence. There's something inside that cone of Bivens. It's not claims against ICE agents. It's not claims against immigration at the border. It's not claims against IRS agents. It's something, and it has to be. This has to be that case. We have a civilian, three minor children U.S. citizens with constitutional rights who are not suspected of any wrongdoing, who are seized and searched in an egregious manner with no authorization whatsoever and have their rights violated, who are not suspected of a crime. I respectfully submit, that's what has to be within that cone. You know what that red light means? It means I'm done, Your Honor, and thank you. Thank you, sir. We'll come down and read counsel and adjourn the court until 8.30 tomorrow morning. This arm of court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, A. Marvin Quattlebaum Jr.